Filed 10/18/13  Austiaj Limited Partnership v. Parineh CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| AUSTIAJ LIMITED PARTNERSHIP et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> GUIV PARINEH et al., <br><br> Defendants and Respondents. | H037210, H037516 <br> (Santa Clara County <br> Super. Ct. No. CV188848) |

Appellants Austiaj Parineh, Austiag Hormoz[1] Parineh and Khashayar Parineh (collectively "appellants"), along with Austiaj Limited Partnership (ALP), sued their uncle, Guiv Parineh, alleging he committed various torts, including conversion and breach of fiduciary duty, when he served as the trustee of three individual trusts established for their benefit.  Guiv in turn cross-complained against the appellants, alleging appellants conspired to mislead and deliberately induce him to commit the torts set forth in their complaint against him, and that they did so in order to later file that civil action.  Appellants brought special motions to strike, pursuant to Code of Civil Procedure section 425.16,[2] certain causes of action in Guiv's cross-complaints, claiming that those

---

[1] Henceforth "Hormoz," to avoid confusion with his sister, Austiaj.

[2] Further unspecified statutory references are to the Code of Civil Procedure.

causes of action arise out of protected activity, namely their right to petition. The trial court denied the anti-SLAPP[3] motions.

We shall affirm the orders.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In 1992, Pooroushasb aka Peter Parineh (Peter), his now-deceased wife, Parima Parineh, and their three children, Austiaj, Hormoz and Khashayar, established ALP to hold the family's various investments, consisting mostly of real property. Peter owned 40 percent of ALP, with the other family members each holding a separate 15 percent interest in the partnership.

Also in 1992, Guiv was designated as trustee of three individual irrevocable trusts[4] established for the benefit of Austiaj, Hormoz and Khashayar. In 2010, however, Austiaj, Hormoz and Khashayar asserted control over their respective trusts.

According to Austiaj, Hormoz and Khashayar, Guiv refused to provide an accounting to them of his management of the brokerage accounts associated with their respective trusts. However, they eventually obtained documents relating to those accounts in October 2010. Austiaj, Hormoz and Khashayar claim those documents revealed that $2.4 million had been deposited in each of the three accounts in May 2007, but less than a month later, Guiv had transferred $2.375 million from each account to "an unknown account."

The three siblings subsequently filed a complaint[5] against Guiv, Peter and several other parties, listing causes of action for breach of fiduciary duty, conversion, unjust

---

[3] "SLAPP" stands for " 'strategic lawsuits against public participation.' " (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 85 (*Navellier*).)

[4] The trusts are known as Parineh Family Trust I, II and III.

[5] The original complaint named ALP and the three trusts as plaintiffs. However, trusts are not recognized as legal entities and may not sue or be sued. (See Prob. Code, §§ 17200, subd. (a), 17200.1; see also Code Civ. Proc., § 369, subd. (a)(1).) The first (continued)

2

enrichment, and accounting. The operative complaint alleges that Peter and Guiv, with the assistance of the other defendants, misappropriated funds from the three trusts and from ALP, and used those funds for their personal enrichment.

Guiv cross-complained against Peter, Austiaj, Hormoz and Khashayar, among others, alleging that the 2007 deposits were made by Peter, Austiaj, Hormoz and Khashayar themselves. At the time, they informed Guiv the funds came from the sale of real property belonging to ALP. Within a few days, however, Peter, Austiaj, Hormoz and Khashayar told Guiv that ALP's accountant had advised them the taxes owed on these funds would be substantial unless they engaged in a "like kind" exchange of investment property as allowed by 26 United States Code section 1031.

Consequently, Guiv says he was specifically instructed by Peter, Austiaj, Hormoz and Khashayar to sign a letter of authorization transferring funds from the trust accounts into what they told him was ALP's brokerage account. Guiv had no control over that other account and the account number was provided to him by Peter, Austiaj, Hormoz and Khashayar. Because his brother and his brother's children were well-educated adults, each of whom also held real estate licenses, Guiv followed their instructions. He alleges he does not know what happened to the monies after they were transferred to the other account.

As to Austiaj, Hormoz and Khashayar, the cross-complaint includes various fraud causes of action as well as causes of action for conspiracy, indemnity, contribution, and accounting. In support of each of his causes of action, Guiv alleges that, at the time his brother and his brother's children instructed him to transfer the funds to what they told him was ALP's account, Austiaj, Hormoz and Khashayar secretly intended to sue him for conversion and breach of fiduciary duty.

amended complaint substituted Austiaj, Hormoz and Khashayar in their capacities as trustees of the Parineh Family Trusts (I, II and III) as plaintiffs in place of the trusts.

3

Austiaj, Hormoz and Khashayar filed a special motion to strike eight causes of action in the cross-complaint on the grounds they arose from their protected activity of filing the underlying lawsuit. The trial court denied the motion, finding that Austiaj, Hormoz and Khashayar had "failed to make a prima facie showing that the present action arises from or is based upon their protected free speech or petitioning activity." Consequently, the trial court did not proceed to determine whether Guiv could demonstrate a probability of prevailing on the claims.

Austiaj, Hormoz and Khashayar timely appealed from the trial court's July 8, 2011 order (H037210).

Shortly after the ruling on the initial anti-SLAPP motion, Guiv filed a first amended cross-complaint, adding a cause of action for financial elder abuse. The first amended complaint alleges that the above-described fraudulent conduct of Austiaj, Hormoz and Khashayar constitutes financial elder abuse because Guiv was 65 years old at the time he transferred the funds from the trust accounts at their direction.

Austiaj, Hormoz and Khashayar filed a second anti-SLAPP motion directed at the newly-pleaded elder abuse cause of action. The trial court denied that motion as well, on the grounds Austiaj, Hormoz and Khashayar had again failed to show that the cause of action arises from protected activity. As before, the court did not address the secondary question of whether Guiv could demonstrate a probability of prevailing on the claim.

Austiaj, Hormoz and Khashayar timely appealed from the trial court's September 22, 2011 order (H037516).

Austiaj, Hormoz and Khashayar requested that we consolidate the two appeals (H037210 and H037516), but we denied the motion, ordering instead that the matters be considered together for purposes of record preparation, briefing, oral argument and decision.

4

## II. DISCUSSION

Before addressing the merits of the appeals, we first dispose of Guiv's arguments that one or both appeals should be dismissed on procedural grounds.

### A. *The appeal in H037210 is not moot*

Guiv argues his first amended cross-complaint, which was filed after the trial court denied the anti-SLAPP motion brought against the original cross-complaint, operated to supersede not just the original complaint, but also the order denying the first anti-SLAPP motion. On that basis, Guiv contends the appeal from that order (H037210) is moot and must be dismissed. We disagree.

It is true that the filing of an amended complaint supersedes the original complaint, but that effect does not extend, as a matter of course, to appealable orders that have been entered addressing that original complaint, particularly where an appeal has in fact been taken from such an order. To hold otherwise would give the respondent undue power over this court's jurisdiction. Furthermore, we note that in the trial court, once an anti-SLAPP motion has been filed and is pending, the opposing party is not permitted to amend the targeted complaint until after the motion has been heard and decided. (*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1294.) If we were to find the appeal from the first anti-SLAPP motion to be moot simply because an amended complaint had been filed subsequent to the ruling on that motion, we would in effect be permitting Guiv to accomplish what he could not below, i.e., render moot a pending anti-SLAPP motion by amending his pleading.

### B. *The opening briefs' captions*

Guiv also argues the two appeals must be dismissed because the captions on both of the opening briefs are defective in that they identify the appellants in their capacity as trustees, rather than in their individual capacities. His cross-complaints were filed against appellants as individuals.

As appellants point out in their reply briefs, the captions on their opening briefs inadvertently identified them as appearing in their capacities as trustees, rather than as individuals. The notices of appeal, however, were filed by them in their individual capacities and appellants filed and served a notice of errata correcting the error.

We decline the request to dismiss. The error, if any there were, was timely corrected and could not have prejudiced Guiv. In any event, such a request is better addressed by separate motion rather than by raising it in a respondent's brief.

Having disposed of the procedural objections, we turn to the substance of the appeals.

### C.     *Anti-SLAPP analysis*

#### 1.     *Overview of the anti-SLAPP statute*

The anti-SLAPP statute provides a "procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055-1056.) Consequently, "the anti-SLAPP statute is to be construed broadly." (*Padres L.P. v. Henderson* (2003) 114 Cal.App.4th 495, 508.)

In evaluating an anti-SLAPP motion, the trial court must engage in a two-step process. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon*).) It first determines "whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." (*Navellier*, *supra*, 29 Cal.4th at p. 88.) A defendant meets this burden by demonstrating that plaintiff's action is premised on statements or conduct taken " 'in furtherance of the [defendant]'s right of petition or free speech under the United States [Constitution] or [the] California Constitution in connection with a public issue,' as defined in the [anti-SLAPP] statute. (§ 425.16, subd. (b)(1).)" (*Equilon*, *supra*, at p. 67.) If the defendant makes the requisite showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the claim. (*Ibid*.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute--i.e., that arises from protected speech or petitioning *and* lacks even minimal

6

merit--is a SLAPP, subject to being stricken under the statute." (*Navellier*, *supra*, at p. 89.)

### 2. *Standard of review*

We review the trial court's decision de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.) In so doing, we consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) We do not make credibility determinations or compare the weight of the evidence presented below. Instead, we accept the opposing party's evidence as true and evaluate the moving party's evidence only to determine if it has defeated the opposing party's evidence as a matter of law. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.) The court "should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.)

### 3. *The anti-SLAPP motions were properly denied*

"A claim does not arise from constitutionally protected activity *simply because it is triggered by such activity* or is filed after it occurs." (*World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc.* (2009) 172 Cal.App.4th 1561, 1568 (italics added).) In deciding whether a cause of action "arises from" protected activity, "the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) An "act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." (*Ibid.*) "Simply stated, to determine the applicability of the anti-SLAPP statute, we look to the allegedly wrongful and injurious conduct of the defendant, *rather than the damage which flows from said conduct.*" (*Renewable Resources Coalition, Inc. v. Pebble Mines Corp.* (2013) 218 Cal.App.4th 384, 396-397.)

7

In *Navellier*, the court cautioned that the anti-SLAPP statute's definitional focus is not the form of the plaintiff s cause of action but rather the defendant's *activity* that gives rise to his or her asserted liability. (*Navellier*, *supra*, 29 Cal.4th at p. 92.) Thus, courts "assess the principal thrust by identifying '[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim.' " (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272 (*Hylton*); see also *Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 189 (*Martinez*).) "If the core injury-producing conduct upon which the plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute." (*Hylton*, *supra*, at p. 1272.)

Under the " 'principal thrust or gravamen test,' " even if a cause of action is based on allegations of both protected and unprotected activity, the anti-SLAPP statute may still apply. (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 319.) So long as the allegations of protected activity are not "only incidental to a cause of action based essentially on nonprotected activity," the cause of action is subject to section 425.16. (*Martinez*, *supra*, 113 Cal.App.4th at p. 188.)

Unquestionably, the act of filing a lawsuit is an exercise of a plaintiff's constitutional right to petition. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115.) The act of filing is not enough, however; the cross-complaint or subsequent action must *arise* from that petitioning activity. This is the question before us in the instant case. Thus, we must examine the pleadings and the supporting and opposing affidavits to determine whether the cross-complaints arose out of appellants' filing of their lawsuit against Guiv. (§ 425.16, subd. (b)(2); *Navellier*, *supra*, 29 Cal.4th at p. 89.)

Merely asking for damages associated with petition activity does not convert those damages into the "principal thrust" or even a focus of the cross-complaint. As discussed

above, a cause of action may be related to, associated with, or even triggered by, protected activity without being subject to the anti-SLAPP statute. (*Martinez*, *supra*, 113 Cal.App.4th at p. 188; *Freeman v. Schack* (2007) 154 Cal.App.4th 719.)

Here, the first eight causes of action in the original cross-complaint and the tenth cause of action in the first amended cross complaint are based on Guiv's allegations that Austiaj, Hormoz and Khashayar conspired to make misrepresentations to him in order to induce him to transfer funds from their trust accounts to the account they specified. They did so in order to later claim that the funds were transferred for Guiv's own benefit and bring an action against him for breach of fiduciary duty, among other things.

In appellants' view, the causes of action based on these allegations should have been stricken because their alleged wrongdoing is only harmful by virtue of their having engaged in a protective activity, namely filing a lawsuit against Guiv. Had they lied to Guiv as he alleged, but never filed a civil complaint for the actions he undertook in reliance on those misrepresentations, Guiv would have suffered no damage as a consequence of their conduct.

Appellants overlook the fact that their alleged wrongful conduct, specifically the misrepresentations they made to Guiv, was not conducted *in furtherance of* their right to petition. Although Guiv alleges that appellants intended to bring a lawsuit against him for the damages they purportedly induced him to cause, their misrepresentations were not actions taken in furtherance of a protected activity. The misrepresentations were taken in furtherance of their alleged scheme to subsequently blame their uncle for mishandling their trusts and depriving them of millions of dollars. The fact that they are alleged to have had a contemporaneous intent to recoup those monies by later suing Guiv for breach of fiduciary duty, etc., does not mean that the claims are premised on a protected activity.

Appellants' comparisons between this case and prior SLAPP decisions miss the point. *Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921 (*Kajima*), only underscores the significance of the "arising from"

9

element in a cross-action. In that case, the court found significant the fact that the allegations of wrongdoing were all associated with Kajima's efforts to successfully bid on and undertake construction projects and therefore the City's causes of action arose from "Kajima's bidding and contracting practices, not from acts in furtherance of its right of petition or free speech." (*Id*. at p. 929.) The assertion that the cross-action was filed in retaliation for Kajima's lawsuit was immaterial, even though it contained an allegation that Kajima had threatened to sue if its claims were not paid. (*Id*. at pp. 930-931.)

Appellants also suggest we should be guided by the fact that, in *Kajima*, the anti-SLAPP motion was denied as to the 18 causes of action in the City's cross-complaint that did not expressly reference the filing of the underlying complaint, but was granted as to the one cause of action that did so. However, as the court of appeal noted, the City did not appeal the trial court's order striking that cause of action, and thus there was no occasion to rule on that aspect of the trial court's order. (*Kajima*, *supra*, 95 Cal.App.4th at p. 930.) Even if the court of appeal had made any observations on this point, its observations would of course be dicta. (*Krupnick v. Hartford Accident & Indemnity Co*. (1994) 28 Cal.App.4th 185, 199.) Decisions are authority for points " 'actually involved and actually decided,' " and not otherwise. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 620.) We therefore decline to read *Kajima* to approve of striking a cause of action pursuant to section 425.16 merely because that claim expressly references the filing of a complaint.

We thus conclude that Guiv's cross-complaints are not based on, and consequently do not arise from, protected activity within the meaning of the anti-SLAPP statute. Because appellants failed to meet their initial burden under section 425.16, subdivision (b), the burden never shifted to Guiv to demonstrate a probability that he would prevail on his cross-complaints. Accordingly, we need not address that issue in this appeal. (Cf. *Martinez, supra*, 113 Cal.App.4th at pp. 185, 193; *Kajima, supra*, 95 Cal.App.4th at pp. 934-935.)

10

### D.    *Guiv's request for attorney fees*

In his respondent's brief, Guiv points out that the trial court did not award him the $10,800 in attorney fees he incurred in connection with either of appellants' anti-SLAPP motions, despite his successful opposition to both.  He now asks for an award of attorney fees, though it is not clear from his brief whether he is seeking the fees incurred in opposing the motions below, the attorney fees incurred in connection with the instant appeals or both.  Regardless, we deny his request.

Guiv did not separately appeal the orders denying his requests for the attorney fees incurred in opposing the anti-SLAPP motions in the trial court, and thus the matter is waived.  To the extent he is seeking an award of the attorney fees he has incurred in connection with the instant appeals, we do not find that the appeals were "frivolous or solely intended to cause unnecessary delay."  (§ 425.16, subd. (c)(1).)

## III.    DISPOSITION

The orders are affirmed.  The parties shall bear their own costs on appeal.

_____
Premo, J.

WE CONCUR:

_____
Rushing, P.J.

_____
Elia, J.