[No. D040279. Fourth Dist., Div. One. Nov. 12, 2003.]

GLORIA MARTINEZ et al., Plaintiffs and Respondents, v.
METABOLIFE INTERNATIONAL, INC., Defendant and Appellant.

COUNSEL

Higgs, Fletcher & Mack, John Morris, William A. Low, Susan M. Hack; Akin Gump Strauss Hauer & Feld, Rex S. Heinke and Jonathan Gottlieb for Defendant and Appellant.

Law Offices of Christopher E. Grell, Christopher E. Grell and Ian P. Dillon for Plaintiffs and Respondents.

OPINION

**McDONALD, J.**—Respondents Gloria and George Martinez (together Plaintiffs) filed this action against appellant Metabolife International, Inc. (MII) alleging that Gloria used Metabolife 356 (the Product), a product manufactured and marketed by MII, in accordance with the instructions provided by MII, and that she suffered a stroke caused by her use of the Product. MII appeals from the order denying its motion to strike Plaintiffs' complaint under the anti-SLAPP statute (Code Civ. Proc., § 425.16; all undesignated statutory references are to this code).

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Complaint*

Gloria consumed the Product for approximately three years before she suffered a severe stroke in October 2000. Plaintiffs' complaint, alleging that Gloria's physical injuries were caused by the effects of ingredients (including ephedrine) contained in the Product, pleaded causes of action for product liability, negligence, breach of implied warranty, breach of express warranty and fraud, and sought compensatory and punitive damages.[1]

B. *The Anti-SLAPP Motion*

MII moved to strike the complaint under the anti-SLAPP statute. MII argued Plaintiffs' complaint targeted MII's commercial speech, which can

---

[1] George pleaded a separate claim for loss of consortium.

qualify for First Amendment protection (see generally *Va. Pharmacy Bd. v. Va. Consumer Council* (1976) 425 U.S. 748, 770 [48 L.Ed.2d 346, 96 S.Ct. 1817]; *Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 493 [101 Cal.Rptr.2d 470, 12 P.3d 720]); the complaint was laced with allegations referring to MII's labeling of and advertising for the Product, and each of the discrete causes of action contained at least one express or implied reference to this *speech*. MII argued that because Plaintiffs' causes of action arose out of protected speech, the burden shifted to Plaintiffs to show a reasonable probability of success on the merits.

Plaintiffs opposed the motion to strike, arguing that MII could not meet the threshold burden to show the claims for product liability, negligence, fraud, and breach of implied warranty were within the ambit of the anti-SLAPP law. Plaintiffs argued those claims were based on conduct not protected by the First Amendment; instead, the claims arose from unprotected conduct, including manufacturing and distributing a defective product, not testing the Product, knowingly misrepresenting the risks associated with consuming the Product, and implying the Product was suitable for its intended purpose or reasonably fit for human consumption. Plaintiffs also asserted that, even were the claim for breach of express warranty within the ambit of the anti-SLAPP statute, they could show a reasonable probability of success on the merits.[2] The trial court denied MII's motion, and we affirm.[3]

---

[2] Plaintiffs attached to their opposition to MII's anti-SLAPP motion articles from medical publications drawing a link between strokes and consumption of products containing ephedrine, medical texts showing risks to persons with high blood pressure from ephedrine consumption, and deposition transcripts from doctors who testified in other cases to the linkage between the Product and health problems suffered by the consumer of the Product. We need not reach MII's secondary argument—that this showing was insufficient to satisfy Plaintiffs' burden of showing a reasonable probability of success on the merits—because we conclude their claims do not arise out of protected conduct. (*Paul v. Friedman* (2002) 95 Cal.App.4th 853, 868–869 [117 Cal.Rptr.2d 82].)

[3] The trial court denied the motion, reasoning that: (1) MII did not demonstrate the product liability, negligence, fraud, and breach of implied warranty claims arose out of conduct protected by the anti-SLAPP statute; and (2) although the express warranty claim did arise out of protected conduct, Plaintiffs had shown a reasonable probability of prevailing on the merits of that claim. Because we agree with the order, although not necessarily all of the rationales for the order, we affirm. (*Tippett v. Terich* (1995) 37 Cal.App.4th 1517, 1539 [44 Cal.Rptr.2d 862], disapproved on other grounds in *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 171 [96 Cal.Rptr.2d 518, 999 P.2d 706].)

II

ANALYSIS

### A. *The Anti-SLAPP Statute*

The anti-SLAPP statute was enacted in 1992 for the purpose of providing an efficient procedural mechanism to obtain an early and inexpensive dismissal of nonmeritorious claims "arising from any act" of the defendant "in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue . . . ." (§ 425.16, subd. (b)(1).) To achieve this objective, the Legislature authorized the filing by a defendant of a special motion to strike those claims within 60 days after service of the complaint. (§ 425.16, subds. (b)(1), (f).) An anti-SLAPP motion "requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds [that] such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon*).) The trial court's determination of each step is subject to de novo review on appeal. (*Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 456 [125 Cal.Rptr.2d 534].)

### B. *Plaintiffs' Claims and the Ambit of the Anti-SLAPP Statute*

The anti-SLAPP statute applies only to a "cause of action . . . arising from" acts in furtherance of the defendant's constitutional right of petition or free speech in connection with a public issue (§ 425.16, subd. (b)(1)), and it is the defendant's burden in an anti-SLAPP motion to initially show the suit is within the class of suits subject to a motion to strike under section 425.16. (*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 304 [106 Cal.Rptr.2d 906] (*Fox Searchlight*).) "In deciding whether the initial 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts [on] which the liability or defense is based.' " (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703] (*Navellier*).)

The courts have struggled to refine the boundaries of a cause of action that arises from protected activity. In *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695] (*Cotati*), the court explained that "the statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been

an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether *the plaintiff's cause of action itself was based on an act in furtherance of* the defendant's right of petition or free speech." (Second italics added.) In *Navellier*, the court cautioned that the "anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier, supra,* 29 Cal.4th at p. 92.) Accordingly, the "arising from" prong encompasses any action *based on* protected speech or petitioning activity as defined in the statute (*Id.,* at pp. 89–95), regardless of whether the plaintiff's lawsuit was *intended* to chill (*Equilon, supra,* 29 Cal.4th at p. 58) or *actually* chilled (*Cotati, supra,* 29 Cal.4th at p. 75) the defendant's protected conduct.

The parties cite no cases evaluating the specific issue before us: whether a claim for physical injury allegedly caused by use of a product, asserting theories of liability sounding in tort, contract and strict liability, is within the ambit of the anti-SLAPP statute. Although section 425.16, subdivision (e) specifies four categories of conduct that qualify for anti-SLAPP protection, MII's argument relies on only two of those categories: "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest" (subd. (e)(3)) and "any other conduct in furtherance of the exercise of . . . the constitutional right of free speech in connection with a public issue or an issue of public interest" (subd. (e)(4)). MII asserts its labeling of and advertising for the Product constitute written statements made in a place open to the public in connection with an issue of public interest within the meaning of subdivision (e)(3); it contends there is widespread public interest in dietary supplements generally and in the Product in particular. MII also asserts that its labeling of and advertising for the Product are within the meaning of subdivision (e)(4) because labels and advertisements are commercial speech entitled to First Amendment protection and concern dietary supplements, an issue of public interest.

Our Supreme Court has recognized that the anti-SLAPP statute should be broadly construed (*Equilon, supra,* 29 Cal.4th at p. 60, fn. 3), and a plaintiff cannot avoid operation of the anti-SLAPP statute by attempting, through artifices of pleading, to characterize an action as a "garden variety breach of contract [or] fraud claim" when in fact the liability claim is based on protected speech or conduct. (*Navellier, supra,* 29 Cal.4th at pp. 90–92.) However, no matter how broadly we construe the anti-SLAPP statute, MII's liability (if any) for Plaintiffs' injuries cannot be characterized as being premised on speech or conduct by MII protected by the First Amendment.

Dictum in *Fox Searchlight* suggested "a plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one 'cause of action.' " (*Fox Searchlight, supra,* 89 Cal.App.4th at p. 308.) Conversely, a defendant in an ordinary private dispute cannot take advantage of the anti-SLAPP statute simply because the complaint contains some references to speech or petitioning activity by the defendant. (See *Paul v. Friedman, supra,* 95 Cal.App.4th at p. 866 ["[t]he statute does not accord anti-SLAPP protection to suits arising from any act having any connection, however remote, with an official proceeding"].) ■ We conclude it is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies (*Cotati, supra,* 29 Cal.4th at p. 79), ■ and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute.

Protected speech is not the gravamen or principal thrust of the claims asserted in Plaintiffs' complaint. MII's commercial speech, although mentioned in the complaint, is largely unrelated to and entirely distinct from the wrongful, injury-causing conduct by MII on which Plaintiffs' claims are premised. An examination of each of the pleaded theories of liability illustrates that the principal acts or omissions on which each cause of action is founded are independent from collateral acts by MII involving commercial speech. For example, a claim for product liability, as asserted by Plaintiffs' third cause of action, is based on showing MII manufactured or sold a product for use or consumption, the product reached Gloria without substantial change in its condition, the product was used in the intended or reasonably foreseeable manner, and Plaintiffs were injured as the result of a defect in the product that rendered the product unsafe for its intended use. (See 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 588, pp. 686–687.) MII cites no authority holding ■ the First Amendment protects the manufacturer or seller of an unsafe product from liability for injuries caused by defects in that product, and we decline to extend the anti-SLAPP statute to a product liability claim merely because the complaint *also* alleges the manufacturer or seller engaged in commercial speech to market the product. (Accord, *Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 931 [116 Cal.Rptr.2d 187] [where claims seek to impose liability based on unprotected conduct, collateral references to additional protected conduct do not make claims subject to anti-SLAPP treatment]; *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1001 [113 Cal.Rptr.2d 625] [same].)

Plaintiffs' negligence claim, at least in the present context, is essentially a variant of their product liability claim. Their negligence claim differs principally from the product liability claim by focusing on the conduct of the manufacturer (alleging it was negligent in designing and/or manufacturing the product) rather than on the condition of the product itself. (See generally *Milwaukee Electric Tool Corp. v. Superior Court* (1993) 15 Cal.App.4th 547, 556–558 [19 Cal.Rptr.2d 24] [concepts of strict liability and negligence are alternative theories parallel and supplementary to each other].) The gravamen of the wrongful conduct forming the foundation for Plaintiffs' negligence claim, like the gravamen of their product liability claim, is indistinguishable for purposes of applying the anti-SLAPP statute in this case.

The allegedly wrongful and injury-causing conduct by MII that provides the foundation for the claim for breach of the implied warranties of merchantability and fitness is distinct from whether MII also engaged in commercial speech. For example, the implied warranty of merchantability, which arises by operation of law, is breached when the goods do not conform to the promises or affirmations contained on the container or label or are not fit for the ordinary purposes for which the goods are used. (*Hauter v. Zogarts* (1975) 14 Cal.3d 104, 117–118 [120 Cal.Rptr. 681, 534 P.2d 377].) ■ The gravamen of Plaintiffs' second cause of action, alleging the Product was not merchantable because it contained dangerous properties and ingredients that caused injury, is based on the nature and effects of the Product itself, not the marketing efforts undertaken by MII.

■ Similarly, the implied warranty of fitness for a particular purpose is a warranty implied by law when a seller has reason to know that a buyer wishes goods for a particular purpose and is relying on the seller's skill and judgment to furnish those goods. (See generally 3 Witkin, Summary of Cal. Law (9th ed. 1987) Sales, §§ 69–74, pp. 63–67.) The warranty is breached if the goods are not reasonably fit for the intended purpose and result in injury. (See *Gottsdanker v. Cutter Laboratories* (1960) 182 Cal.App.2d 602 [6 Cal.Rptr. 320].) A claim for breach of the implied warranty of fitness is based on the nature and impacts of the product, not on injuries attributable to the marketing efforts by the seller.

Unlike Plaintiffs' claims for product liability, negligence and implied warranty, all of which involve obligations imposed by law and focus on whether the Product or MII's conduct satisfied those obligations, Plaintiffs' claims for breach of express warranty and fraud *do* require proof of MII's statements or representations concerning the Product.[4] Because these claims

---

[4] We note the court in *Nagel v. Twin Laboratories, Inc.* (2003) 109 Cal.App.4th 39 [134 Cal.Rptr.2d 420] held that representations by a seller concerning the ingredients in its nutritional and dietary supplements *do not qualify* for anti-SLAPP protection *at all*. (*Id.* at

involve *speech,* at least in its colloquial sense *but not necessarily in its First Amendment sense,*[5] we analyze the gravamen of the actionable conduct to determine whether Plaintiffs' breach of express warranty and fraud claims "aris[e] from" protected conduct within the meaning of the anti-SLAPP statute.

Plaintiffs' breach of express warranty and fraud claims appear to be based on representations by MII on the labels and instructions accompanying the Product stating that it was a dietary supplement and a user could take up to eight capsules of the Product per day. The core of the breach of express warranty claim is that the Product *did not* satisfy the warranties for the Product because the Product was a drug rather than a dietary supplement and was not safe to use in its recommended fashion; the core of the fraud claim differs from the warranty claim only insofar as the fraud claim also asserts MII *knew* the Product did not satisfy the warranties for the Product because MII knew it was a drug rather than a dietary supplement and knew it contained levels of ephedrine, caffeine, chromium picolinate, and other stimulants and diuretics that made it unsafe to use as recommended on the Product's use instructions. Thus, the wrongful, injury-producing conduct by MII on which these claims are based focuses on and arises from the nature of the Product itself; the Product did not satisfy its warranties (the breach of

---

pp. 46–51.) That issue was presented in *Nagel* because the conduct alleged to be wrongful and injurious in *Nagel* was the advertising itself. The gravamen of the claims asserted here differ from those asserted in *Nagel*. Accordingly, it is unnecessary for us to adopt or reject *Nagel's* evaluation of that issue.

[5] The court in *Commonwealth Energy Corp. v. Investor Data Exchange, Inc.* (2003) 110 Cal.App.4th 26, 34 [1 Cal.Rptr.3d 390] held that a cause of action may be premised on injuries caused by spoken words, such as claims for false advertising or unfair business practices, and yet not qualify for anti-SLAPP treatment because the "parochial particulars" of the speech and the parties do not satisfy the public issue requirements. The *Commonwealth Energy Corp.* court, discussing the holding in *Consumer Justice Center v. Trimedica International, Inc.* (2003) 107 Cal.App.4th 595 [132 Cal.Rptr.2d 191] (*Trimedica*) that advertising claims made on behalf of an herbal supplement promising breast enlargement did *not* invoke a public issue or an issue of public interest, explained that the "key to [*Trimedica*] was its examination of the *specific nature of the speech* rather than the generalities that might be abstracted from it. [Citation.] The claims were not about 'herbal supplements in general.' Rather, the speech concerned 'the specific properties and efficacy of a particular product.' [Citation.] [¶] *Trimedica* and *Rivero* [*v. American Federation of State, County and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913 [130 Cal.Rptr.2d 81]] effectively stand for the rejection of what might be called the synecdoche theory of public issue in the anti-SLAPP statute. *The part is not synonymous with the greater whole.* Selling an herbal breast enlargement product is not a disquisition on alternative medicine. Lying about the supervisor of eight union workers [as in *Rivero*] is not singing one of those old Pete Seeger union songs (e.g., 'There Once Was a Union Maid'). And, in the case before us, hawking an investigatory service is not an economics lecture on the importance of information for efficient markets." (*Commonwealth Energy Corp., supra,* at p. 34, 2d italics added.) These cases show the courts have become increasingly attuned to the necessity of distinguishing claims involving injuries caused by words from claims involving injuries caused by protected speech.

express warranty claim) and MII knew the Product did not comply with its warrantied character (the fraud claim). MII cites no authority holding that a manufacturer engages in activity protected by the First Amendment when it produces a product that does not meet its warrantied characteristics, or that a manufacturer engages in activity protected by the First Amendment when it produces a product it knows does not meet its warrantied characteristics. We are convinced, even assuming that under some circumstances an anti-SLAPP motion to strike a cause of action targeting commercial speech could satisfy the first prong of section 425.16 (but see part II.C., *post*), the core conduct underlying the breach of warranty and fraud claims seeks recovery for physical injuries caused by activities outside the boundaries of conduct to which the anti-SLAPP statute applies.

### C. Other Cases Evaluating Application of the Anti-SLAPP Statute to Claims Connected with Commercial Advertising

MII relies on *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 567–568 [92 Cal.Rptr.2d 755] (*DuPont*) to support its argument that some of the acts giving rise to Plaintiffs' claims were acts of commercial speech in connection with a public issue entitled to First Amendment protection (*DuPont*, at pp. 565–567), and Plaintiffs cannot avoid the anti-SLAPP statute by combining allegations of protected and nonprotected activity under one cause of action. (*Fox Searchlight, supra,* 89 Cal.App.4th at p. 308.) Plaintiffs counter by citing *Trimedica, supra,* 107 Cal.App.4th 595, in which the court held a claim based on a manufacturer's statements misrepresenting the properties and benefits of an herbal supplement were not subject to anti-SLAPP treatment. (*Id.* at pp. 600–602.)

In *DuPont*, the plaintiffs filed a class action complaint alleging in part that the defendant drug manufacturer made false statements about one of its prescription drug products and the competing generic form of that product to the public in its advertisements and public relations efforts in violation of the California Consumers Legal Remedies Act and California Unfair Practices Act. The trial court, based on the plaintiffs' allegations that the statements were false, held the anti-SLAPP statute did not apply because the plaintiffs' claims did not arise from acts in furtherance of the defendant's right of petition or free speech. However, the *DuPont* court granted a petition for writ of mandate, finding the alleged acts were within section 425.16's definition of an act in furtherance of the right of free speech. (*DuPont, supra,* 78 Cal.App.4th at pp. 565–566.) The court recognized that the defendant's alleged statements were false, deceptive and misleading, and also acknowledged that false commercial speech is not protected as free speech. However, it concluded the truth or falsity of the alleged statements was not relevant in determining whether the plaintiffs' claim arose from acts in furtherance of the

defendant's rights of petition or free speech. Instead, *DuPont* concluded the falsity of the alleged statements was relevant only to the second prong of the section 425.16 analysis, to wit, whether there was a probability the plaintiffs would prevail on their claims. (*DuPont*, at p. 566.)

Although we conclude *DuPont* is distinguishable because the nature of the claims there are markedly different from the claims asserted here, we question whether *DuPont's* holding, which peremptorily relegated truth or falsity of commercial speech to the second prong rather than incorporating this issue into the first prong, was a correct application of the anti-SLAPP statute. The courts have construed the anti-SLAPP statute to require a moving defendant to prima facie show the plaintiff's claim arose from protected conduct, and absent such showing the statute does not apply and no burden shifts to the plaintiff. (*Paul v. Friedman, supra,* 95 Cal.App.4th at pp. 868–869.) Although some types of speech are entitled to First Amendment protection *even if* they are false or misleading, "the First Amendment's protection for false statements is not universal" and "commercial speech that is false or misleading is not entitled to First Amendment protection . . . ." (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 953 [119 Cal.Rptr.2d 296, 45 P.3d 243].) Because a moving defendant under the anti-SLAPP statute must prima facie show the claim arises from an act "in furtherance of the person's right of petition or free speech" before any burden shifts to the plaintiff, a claim arising from a type of speech that is *ineligible* for First Amendment protection *unless* it is not false or misleading would appear to require a moving defendant to prima facie show the speech *is* eligible for First Amendment protection by making at least some showing the statements were *not* false or misleading. *DuPont* conducted no analysis of this quandary, and instead used an *ipse dixit* analysis to place the false or misleading issue into the second prong of the anti-SLAPP analysis. We are aware of no subsequent case that has adopted *DuPont's* approach on this issue; to the contrary, the subsequent cases have distinguished *DuPont* and concluded the commercial speech considered in those cases did not qualify for protection under the anti-SLAPP statute. (*Trimedica, supra,* 107 Cal.App.4th at pp. 600–602; *Nagel v. Twin Laboratories, Inc., supra,* 109 Cal.App.4th at pp. 46–51; *Commonwealth Energy Corp. v. Investor Data Exchange, Inc., supra,* 110 Cal.App.4th at pp. 32–35.)

In contrast to *DuPont,* the court in *Trimedica, supra,* 107 Cal.App.4th 595 held that a lawsuit alleging a manufacturer's statements misrepresenting the properties and benefits of an herbal supplement were false and misleading in violation of the California Consumers Legal Remedies Act and unfair competition laws was not subject to anti-SLAPP treatment. However, *Trimedica's* holding was premised on its conclusion that misrepresentations contained in advertisements about a *specific* product is not speech on "a matter of general 'public interest' within the meaning of the [anti-SLAPP] statute," and did not

evaluate whether false commercial advertising is protected conduct under the anti-SLAPP statute. (*Id.* at p. 601.) Indeed, *Trimedica* distinguished *DuPont* by reasoning that the public interest element of the anti-SLAPP statute was satisfied in *DuPont* because the number of persons interested in the specific product at issue in *DuPont* had "little in common" with the product considered in *Trimedica*. (*Trimedica, supra,* 107 Cal.App.4th at pp. 601–602.) We are uncomfortable with this approach for a number of reasons, not the least of which is that it makes the anti-SLAPP statute unavailable to a defendant charged with deceiving only a few members of the public but arguably permits a different defendant, charged with the same conduct, to invoke the anti-SLAPP statute's protections if it deceived millions of victims.

We conclude that neither *DuPont* nor *Trimedica* provide guidance here because the gravamen of the claims asserted in this case differs markedly from the core of the claims asserted in *DuPont* and *Trimedica*. Here, the core of the wrongful injury-producing conduct alleged was that MII manufactured and sold a defective product that caused Gloria's physical injuries. In contrast, the courts in *DuPont* and *Trimedica* evaluated claims in which the core of the wrongful, injury-producing conduct was the false advertising. (*Dupont, supra,* 78 Cal.App.4th at pp. 564–565 [claims under California Consumers Legal Remedies Act and Unfair Practices Act asserted defendant injured public by artificially inflating prices of drug by disseminating false and omissive information about generic competing drug]; *Trimedica, supra,* 107 Cal.App.4th at pp. 599, 603–605 [claims under California Consumers Legal Remedies Act and unfair competition laws asserted defendant injured public by disseminating false or misleading claims on safety and benefits of herbal supplement].) Unlike *DuPont* and *Trimedica,* in which the *speech* proximately caused the injuries for which recovery was sought, here *the Product* allegedly proximately caused the injuries suffered by Plaintiffs for which recovery is sought.

## D. *Conclusion*

We are convinced that anti-SLAPP protected activity is not the gravamen or principal thrust of Plaintiffs' complaint. The bulk of the complaint alleges garden-variety personal injury claims for physical injuries proximately caused by activity apart and distinct from any protected conduct, and the allegedly protected activity mentioned in the complaint comprises only a small and insignificant portion of each of the causes of action. We conclude the complaint is not based on, and does not arise from, protected activity as defined by section 425.16, subdivision (e). Accordingly, the burden never shifted to Plaintiffs to demonstrate a probability they would prevail on their claims, and the trial court correctly denied MII's anti-SLAPP motion.

## DISPOSITION

The judgment is affirmed. Plaintiffs shall recover their costs on appeal.

Huffman, Acting P. J., and Nares, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 24, 2004.