Filed 6/5/14  Zakari v. Miller CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CALIFORNIA RULES OF COURT, RULE 8.1115(A), PROHIBITS COURTS AND PARTIES FROM CITING OR RELYING ON OPINIONS NOT CERTIFIED FOR PUBLICATION OR ORDERED PUBLISHED, EXCEPT AS SPECIFIED BY RULE 8.1115(B).  THIS OPINION HAS NOT BEEN CERTIFIED FOR PUBLICATION OR ORDERED PUBLISHED FOR PURPOSES OF RULE 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| ROBERT ZAKARI,<br><br>    Cross-Defendant and Appellant,<br><br>v.<br><br>LLOYD I. MILLER, III,<br><br>    Cross-Complainant and Respondent. | B247454<br><br>(Los Angeles County<br>Super. Ct. No. BC485006) |

APPEAL from an order of the Superior Court of Los Angeles County, Michael Johnson, Judge.  Affirmed.

Baker & Hostetler, Ryan D. Fischbach; Law Offices of Brian J. Ward, Brian J. Ward; Law Offices of Nate G. Kraut and Nate G. Kraut, for Cross-Defendant and Appellant.

Valle Makoff, Jeffrey B. Valle, Susan L. Klein, and Steven M. Ragona for Cross-Complainant and Respondent.

Robert Zakari appeals from the denial of his special motion to strike a cross-complaint[1] brought by Lloyd I. Miller in this business dispute.  Zakari claims that the cross-complaint is based on conduct which is protected under the anti-SLAPP[2] statute, Code of Civil Procedure section 425.16 (section 425.16).  The trial court disagreed and denied the motion.  We conclude the cross-complaint was not based on protected activity and affirm.

## FACTUAL AND PROCEDURAL SUMMARY

On appeal of an order denying a motion to strike under section 425.16, we review the pleadings and declarations, "accepting as true the evidence that favors the [cross-complainant] and evaluating the [cross-defendant's] evidence '"only to determine if it has defeated that submitted by the [cross-complainant] as a matter of law."  [Citation.]' (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*).)" (*Cole v. Patricia A. Meyer & Associates APC* (2012) 206 Cal.App.4th 1095, 1105.)

Nicholas Matzorkis and Zakari founded Global Agora[3] (Global) in January 2009 as a limited liability company.  In November 2009, Miller and Joshua Keller became additional members of the firm.  All four served as managing members, and an amended and restated operating agreement for Global was drafted to reflect this change.  From November 2009 until October 2012, Matzorkis, Zakari, and Keller each owned 26.67 percent of outstanding units of the company, and Miller owned the remaining 20 percent.  After Global acquired SUP ATX, Zakari was appointed chief executive officer of that entity in June 2010.  Zakari handled all legal matters for both Global and SUP ATX, either directly, or through outside counsel he hired.  He also served as an officer of

---

[1] The underlying complaint brought by Zakari against Miller and others, which we describe below, is not at issue in this appeal.

[2] "SLAPP" is an acronym for Strategic Lawsuit Against Public Participation. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.)

[3] According to the cross-complaint, Global Agora is a company that launches its own companies, as well as investing in start-ups and early stage companies.

Global.  Matzorkis had a long working relationship with Zakari, and Miller had been an investor in a number of Matzorkis's companies since 2002.

In 2010, largely as a result of its acquisition of SUP ATX, Global needed additional operating capital.  Matzorkis approached Miller in May or June 2010, asking him to loan $1 million to Global.  Miller agreed, but said he required a pledge of the other members' interest in Global as security in the event that Global was unable to meet its commitments under the loan.  Each of the members of Global agreed to this condition.  Zakari was responsible for the drafting of the necessary documents, including the pledge agreement.  He retained the same attorney who drafted the operating agreement to draft the promissory note and pledge agreement, and then reviewed the documents.

Before Matzorkis executed the promissory note on the first loan from Miller, and the accompanying pledge agreement, he met with Zakari in Malibu.  He described the meeting in his declaration in opposition to the motion to strike:  "Zakari mentioned to me, almost as an aside, that regardless of the pledge agreement, Miller would not be able to foreclose on the members' interests in the event Global Agora defaulted on the loan.  When I pressed him on this point, he explained that, based upon his discussion [with retained counsel], he believed that there was a conflict between the loan document, including the pledge agreement, and Global Agora's Operating Agreement that would prevent Miller from foreclosing on the members' interests in the case of a default by Global Agora under the promissory note."

Nevertheless, by the beginning of July 2010, all of the loan documents, including the promissory note and pledge agreement, had been executed by all parties and Miller made the $1 million loan to Global.  When it needed additional operating funds, Miller made personal loans to Global of $500,000 in October 2010; $400,000 in December 2010; and $500,000 through the Lloyd Miller Trust C in March 2011.  We refer to these loans collectively as the "Miller loans."  Each loan was secured by a promissory note and amended and restated pledge agreements.  (The parties treat the Third Amended and Restated Pledge Agreement as the operative agreement.  We refer to it as the pledge

agreement.) Each of the Miller loans required Global to make monthly interest payments and to pay off the principal by a stated maturity date.

The pledge agreement included express representations and warranties by Zakari, Matzorkis and Keller, including that each had the right and full legal capacity to pledge his security interest as collateral for the Miller loans.[4] The pledge agreement and note expressly stated they were nonrecourse.

In March 28, 2012, counsel for Miller informed Global by letter that it was in default by failing to pay accrued interest under each note due on March 1, 2012. Miller elected to accelerate each debt and demanded immediate payment of all principal and interest. In September 2012, Miller notified Matzorkis, Zakari and Keller that he would proceed with sale of their membership interests in Global (collateral under the pledge agreement) on October 25, 2012. On October 25, Miller purchased the Global membership interests of Matzorkis, Zakari and Keller.

Zakari filed an action in Los Angeles Superior Court against Miller, the Lloyd I. Miller Fund C, Global, Keller, and others. The first amended complaint, the charging pleading, alleged causes of action for rescission of the pledge agreement, breach of contract, unjust enrichment, breach of fiduciary duty, and others.

Miller filed a cross-complaint against Zakari alleging causes of action for fraud, breach of fiduciary duty, constructive fraud, and breach of representations and warranties in the pledge agreement. It alleged a fraudulent scheme by which Zakari induced Miller to make loans with the membership interests of the other three members serving as

---

[4] Paragraph 3 stated in pertinent part: "Representations and Warranties. Each Pledgor severally represents and warrants as follows: . . . [¶] (b) such Pledgor has full legal capacity to enter into this Agreement and has the right to pledge and grant a security interest in the Member Interests as provided by this Agreement. The execution, delivery and performance hereof does not contravene or violate any law or the terms of any agreement or undertaking to which such Pledgor is a party or by which such Pledgor is bound. [¶] (c) This Agreement has been duly executed and delivered by such Pledgor and constitutes a legal, valid and binding obligation of such Pledgor, enforceable against such Pledgor in accordance with its terms, [except for certain specified creditor's rights circumstances]."

4

collateral in the event of Global's default. Miller alleged: "Unbeknownst to Miller, Zakari never had any intention of honoring his promise to pledge his membership interest in Global Agora and to surrender his membership interest in the event that Global Agora defaulted on the loans. Nonetheless, despite Zakari's fiduciary obligations to Miller as a Manager, officer and counsel for Global Agora, Zakari told Miller he would do so in order to induce Miller to provide the Miller Loans." Miller alleged that in the event of a default, Zakari planned to avoid his obligation under the pledge agreement by asserting that it was invalid under section 11.1 of the operating agreement, which prohibits any lien on a membership agreement. The cross-complaint alleged that Zakari believed the pledge agreement to be unenforceable, evidenced by his conversation with Matzorkis before the documents were executed. But Zakari never told this to Miller, despite his fiduciary obligations.

The cross-complaint alleged: "Consistent with Zakari's fraudulent and wrongful scheme, rather than comply with his contractual promises made in the Pledge Agreement, he instead filed his Complaint in this action on May 18, 2012" and a first amended complaint after the defendants demurred. It alleged the pledge agreement was enforceable and valid, "[h]owever, if for any reason the Pledge Agreement is found to be unenforceable, either in whole or in part, Zakari is liable for damages as a result of his breach of the express representations and warranties he made in the Pledge Agreement. Moreover, he is liable for his fraudulent and wrongful conduct as alleged herein."

The first cause of action for fraud alleged that Zakari represented he would pledge his membership interest as collateral, played a role in drafting the necessary documents, and executed the pledge agreement. But, allegedly, Zakari had no intention of complying with these promises, because in the event of a Global default he intended to assert Section 11.1 of the operating agreement as a basis to avoid compliance with the contractual obligations. It was alleged that Zakari knew his representations were false when made, and that they were made in order to induce Miller to rely on the representations by making the loans to Global. The damages allegation of the fraud cause of action is that after the default, Zakari brought his action to rescind the pledge agreement or otherwise

invalidate Miller's foreclosure on his ownership interest, based on the argument that the pledge was invalid under section 11.1 of the operating agreement. Miller alleged: "As a result, if for any reason the Pledge Agreement is found to be unenforceable, either in whole or in part, as Zakari alleges in his [first amended complaint], Miller would be damaged in an amount to be proven at trial."

The second cause of action for breach of fiduciary duty alleges that Zakari owed such duties to Miller. He allegedly breached them by agreeing to execute the pledge agreement without any intention of performing it, and by failing to tell Miller he believed the pledge agreement to be unenforceable as contrary to the operating agreement. The damages allegation is: "As a result, if for any reason the Pledge Agreement is found to be unenforceable, either in whole or in part, as Zakari alleges in his [first amended complaint], Miller would be damaged in an amount to be proven at trial." The third cause of action for constructive fraud is based on the same allegations. The fourth cause of action for breach of representation and warranties in the pledge agreement is based on the representation that Zakari had "'full legal capacity to enter into this [pledge] Agreement and has the right to pledge and grant a security interest in the Member Interests as provided by this Agreement . . .'" and that the execution, delivery, and performance of the pledge agreement did not contravene any law or other agreement, and that it is legal, valid, and binding. The prayer for relief seeks compensatory damages, punitive damages, and costs and fees according to proof.

Zakari filed a special motion to strike the cross-complaint pursuant to section 425.16 as an anti-SLAPP action. "'Section 425.16 posits . . . a two-step process for determining whether an action is a SLAPP. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim.' (*Navellier v. Sletten* [(2006)] 29 Cal.4th [82,] 88 [(*Navellier*)].) 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to

6

being stricken under the statute.' (*Id.* at p. 89.)" (*Soukup*, *supra*, 39 Cal.4th at pp. 278–279.)

The trial court concluded the cross-complaint did not arise from protected activity on the part of Zakari and denied the motion on that basis. For that reason, we confine our procedural summary to the trial court proceedings regarding the first prong of the section 425.16 analysis.

Zakari's motion to strike argued that *Miller* induced *him* into signing a "meaningless and utterly unenforceable pledge agreement" encumbering his membership interest. He cited the portions of the cross-complaint which alleged that he brought the rescission action rather than complying with his contractual promises. Zakari asserted: "[Miller] then goes further and claims that if ZAKARI is actually victorious in his claim for rescission, then [he] is liable for fraud. (Cross-Complaint [¶]33)." Paragraph 33 is a general allegation that if the pledge agreement is found unenforceable, Zakari is liable for damages for breach of express representations and warranties. The paragraph continues: "Moreover, he is liable for his fraudulent and wrongful conduct as alleged herein." This is a separate allegation from the claim that Zakari is liable under the pledge agreement for breach.

Zakari argued that section 425.16 applied because his "filing of a claim [for] rescission obviously constitutes a statement in a civil proceeding and thus, is absolutely protected by C.C.P. § 425.16. No additional showing on this issue is or should be required." He asserted that Miller's cross-complaint was grounded on the filing of the rescission action, as a basis for the fraud and breach of fiduciary causes of action, citing the damages allegations for each of the four causes of action. Anticipating Miller's opposition, Zakari argued that the entire cross-complaint should be stricken even if the causes of action alleged both protected and nonprotected activities.

The trial court denied the motion to strike. It observed that "not every reference to protected activity brings an action within the statute" and found the "principal thrust or gravamen" of the cross-complaint was not the protected activity of filing the rescission action. Instead, it found Miller's references to Zakari's litigation activity to be "merely

7

incidental to his claims in the cross-complaint" and "not an independent basis of liability."

Zakari filed a timely notice of appeal from denial of his motion.

## DISCUSSION

We review an order denying a motion to strike under section 425.16 de novo. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.)

Filing a lawsuit is an exercise of the plaintiff's constitutional right to petition. A lawsuit arising from the allegedly improper filing of an action may be the subject of a motion to strike under section 425.16. (*Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1538–1539.) But "a defendant in an ordinary private dispute cannot take advantage of the anti-SLAPP statute simply because the complaint contains some references to speech or petitioning activity by the defendant. [Citation.]" (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188 (*Martinez*).) On the other hand, "a plaintiff cannot avoid operation of the anti-SLAPP statute by attempting, through artifices of pleading, to characterize an action as a 'garden variety breach of contract [or] fraud claim' when in fact the liability claim is based on protected speech or conduct." (*Id.* at p. 187, citing *Navellier*, *supra*, 29 Cal.4th at pp. 90–92.)

In light of these principles, the general rule is that "it is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies [citation], and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute." (*Martinez*, *supra*, 113 Cal.App.4th at p. 188.)

Zakari attempts to avoid this rule by arguing that it does not apply to causes of action which mix allegations of protected and nonprotected activity. He contends that Miller's cross-complaint is such a mixed conduct action. In such circumstances, Zakari contends, courts should not employ the "principal thrust/gravamen" test described in *Martinez*, *supra*, 113 Cal.App.4th at p. 188. He relies on *Peregrine Funding, Inc. v.*

8

*Sheppard Mullin Richter & Hampton* (2005) 133 Cal.App.4th 658 and *Salma v. Capon* (2008) 161 Cal.App.4th 1275.

We disagree with Zakari's characterization of the claims in the cross-complaint. Miller is not suing Zakari because Zakari sued to rescind. This is not a mixed conduct action. His suit is based on Zakari's allegedly fraudulent promises which induced Miller to make the loans to Global. The first three causes of action for fraud, breach of fiduciary duty and constructive fraud, are based on Zakari's fraudulent inducement of Miller to make loans secured by the pledge agreement, which Zakari allegedly knew to be unenforceable because it conflicted with the express terms of the Global operating agreement which barred any liens on membership interests. Similarly, the fourth cause of action alleges that Zakari breached his express representations and warranties in the pledge agreement that he had full capacity to enter into to the agreement and had the right to pledge and grant a security interest in his membership interests; that the agreement did not violate any law or terms of any other agreement to which Zakari was a party [i.e. the operating agreement for Global]; and that the pledge agreement was legal, valid and binding. Thus all the causes of action are based on Zakari's promises, on which Miller relied in making the loans to Global. Miller makes it clear that his damages are contingent on Zakari's success in rescinding the pledge agreement on the ground that it is invalid and unenforceable. Zakari fails to distinguish between the allegations of liability, all based on unprotected activity, and damages, which are contingent on the outcome of the rescission action.

"[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. [Citation.] Moreover, that a cause of action arguably may have been 'triggered' by protected activity does not entail it is one arising from such. [Citation.] In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity. [Citations.]" (*Navellier*, *supra*, 29 Cal.4th at p. 89; *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76–78; *Personal Court Reporters, Inc. v. Rand* (2012) 205 Cal.App.4th 182, 189–190.) We must

9

distinguish "'between (1) speech or petitioning activity that is mere *evidence* related to liability and (2) liability that is *based on* speech or petitioning activity.' [Citation.]" (*Id.* at p. 189; see also *City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301, 1307.)

We conclude that the allegations in the cross-complaint regarding the rescission action are only incidental to the nonprotected activity, a business dispute between Zakari and Miller sounding in fraud and breach of fiduciary duty. Section 425.16 does not apply to the cross-complaint and the motion to strike was properly denied.

Alternatively, Zakari argues that the conduct alleged in the cross-complaint is protected under section 425.16 because it constitutes prelitigation conduct related to subsequent protected activity. Section 425.16 has been held to apply to communications or conduct in preparation for or anticipation of the bringing of an action or other official proceeding. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115.) But, as Miller points out, such communications are protected only if made "'''''in anticipation of litigation 'contemplated in good faith and under serious consideration . . .'''''" (*Bailey v. Brewer* (2011) 197 Cal.App.4th 781, 789–790.)

Zakari's complaint for rescission alleges that Global had sufficient funds to make the March 2012 payments due on the Miller loans, obviating the need for foreclosure on the membership interest pledges and the ensuing action for rescission. We infer that when hen the pledge agreements were made, the parties contemplated that the infusion of funds from the Miller loans would provide sufficient capital for continued operation of Global. That was the purpose of the loans. The only evidence of contemplated litigation appears in Matzorkis's declaration that Zakari told him before the pledge agreements were signed that they were unenforceable. Even if we construed this as anticipation of litigation, it can hardly be considered to be in good faith. We conclude that Zakari failed to demonstrate that his promises which form the basis of the cross-complaint were made in anticipation of litigation contemplated in good faith and under serious consideration.

Section 425.16 does not apply to the allegations of Miller's cross-complaint because it is not based on protected activity. The special motion to strike was properly

10

denied.  In light of that conclusion, we need not and do not reach the second prong of the anti-SLAPP analysis.

## DISPOSITION

The order denying Zakari's special motion to strike under section 425.16 is affirmed.  Respondent shall recover his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:


WILLHITE, J.


MANELLA, J.


11