Filed 12/31/14  Montgomery v. Klinedinst CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| RICHARD MONTGOMERY et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> KLINEDINST PC, <br><br> Defendant and Appellant. | D063946 <br><br><br> (Super. Ct. No. 37-2012-00086633-CU-NP-CTL) |


APPEAL from an order of the Superior Court of San Diego County, William S. Dato, Judge.  Affirmed.

Daniel S. Agle for Defendant and Appellant.

Law Offices of Friedberg & Bunge, Thomas F. Friedberg and Brittany D. Botterill for Plaintiffs and Respondents.


Klinedinst PC (Klinedinst) appeals from an order denying its special motion to strike Richard Montgomery's and Francis Quirino's (together, Plaintiffs) complaint. Klinedinst brought the motion under Code of Civil Procedure section 425.16, which allows the early dismissal of an action that is determined to be a strategic lawsuit against

public participation (SLAPP) and is thus known as the anti-SLAPP statute. (Undesignated statutory references are to the Code of Civil Procedure.) We conclude the anti-SLAPP statute is inapplicable because the gravamen of the complaint does not arise from protected activity. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 2008, Plaintiffs retained Catherine Richardson to represent them in a lawsuit against the manufacturer of a product that allegedly caused them injuries (Montgomery Litigation). At this time, Richardson was a sole practitioner. In late 2009, Richardson contacted attorney Thomas Friedberg who had resolved a case against the same product manufacturer and asked him if he was interested in working on the Montgomery Litigation. Plaintiffs retained Friedberg and he associated in as counsel in the case. Richardson also remained on the case as counsel of record. Friedberg and Richardson documented a fee sharing agreement, but Plaintiffs never approved it. Richardson did not do any work on the Montgomery Litigation after Friedberg associated in as counsel. In March 2011, after a four-week jury trial, the jury returned a defense verdict.

At some point, Richardson joined the Klinedinst law firm. Richardson did not perform any work on the Montgomery Litigation while at Klinedinst. In April 2011, Friedberg sent Richardson substitution of attorney forms completed by Plaintiffs and informed her that he would not be providing her with an association of counsel fee. Richardson substituted out of the Montgomery Litigation.

In June 2011, the trial court granted Plaintiffs' request for a new trial, re-opened discovery and set a new trial date. Approximately one year later, shortly before trial

2

was set to commence, the parties in the Montgomery Litigation agreed to a confidential settlement. The settlement terms included payment to satisfy liens arising from Montgomery's worker's compensation and child support obligations. The parties expected to finalize the settlement agreement and distribute the settlement proceeds by early July 2012.

In early July 2012, defense counsel in the Montgomery Litigation notified Friedberg that he received a notice of attorney lien filed by Richardson. Defense counsel also stated Richardson had sent him a W-9 form from Klinedinst, her current employer. (All further undesignated date references are to the year 2012.) Defense counsel explained to Friedberg that the attorney lien was an impediment because the normal practice of his client and its insurer would require Richardson's name to be on the settlement check as long as her notice of lien was on file in the case. The confidentiality provision of the settlement agreement prevented the parties from disclosing the amount of the settlement; thus, including Richardson on the check would violate the agreement.

On July 5, Friedberg contacted Richardson and requested that she withdraw her notice of lien because any right she had to fees terminated after the jury entered a defense verdict and Richardson substituted out of the case. Richardson declined to withdraw her lien and stated there was a lien provision in her retainer agreement with Plaintiffs. Friedberg understood Plaintiffs' original retainer agreement with Richardson only allowed her to recover in quantum meruit for the reasonable value of her services.

3

On July 11, Friedberg wrote to Richardson and asked for an itemization of her lien, including costs and all time spent on the Montgomery Litigation. Richardson declined to provide the information. On July 14, Friedberg again wrote to Richardson requesting an itemization of her lien and explaining that she was limited to quantum meruit recovery and had an obligation to ensure that delivery of the settlement proceed to Plaintiffs was not delayed. Richardson responded by acknowledging her right to recovery of fees and costs would be based on quantum meruit. She further noted that she was willing to consider a resolution of her attorney lien.

Friedberg and Richardson continued to correspond regarding the dispute. On July 20, Friedberg wrote to Richardson again, but for the first time, he directed the correspondence to Richardson's e-mail address at Klinedinst, as well as to her private law office.

On August 7, Richardson's counsel, Scott McEwen, informed Friedberg that Richardson had not yet completed her analysis of the time she spent on Plaintiffs' case, but estimated it to be approximately 400 hours. McEwen stated Richardson was willing to resolve her lien claim for $120,000. Further, if Plaintiffs did not accept the settlement offer, Richardson was willing to have a separate check in the amount of $150,000 issued by the defendants in the Montgomery Litigation to Richardson and Plaintiffs jointly, which would be held in a neutral escrow account until the parties reached an agreement. Plaintiffs rejected the offer, requested an itemization of Richardson's time and expenses, and proposed maintaining the disputed funds in Friedberg's client trust account.

On August 8, Friedberg contacted Klinedinst and sought the dates of Richardson's employment with Klinedinst. Klinedinst responded by stating, Richardson did not perform any work on the Montgomery Litigation since joining the firm and she was not acting as a Klinedinst employee when she sought to preserve her fees claim in that case.

On August 15, McEwen provided Friedberg with an itemization of Richardson's time on the Montgomery Litigation. Richardson stated she spent 306.8 hours on the case at a rate of $350 per hour, which amounted to $107,380 in fees. On August 21, Friedberg proposed having a separate check in the amount of $107,380 prepared payable to Plaintiffs, Friedberg's firm, and Richardson. The check could either be deposited in Friedberg's client trust account or remain uncashed in Friedberg's possession. Richardson rejected that proposal and demanded she be paid the full amount immediately.

On August 28, Montgomery's former wife filed a notice of judgment lien in the Montgomery Litigation for approximately $37,000. The judgment had been entered in favor of Montgomery's former wife for spousal support. She requested that Friedberg refrain from disbursement of any settlement proceeds from the Montgomery Litigation until her judgment was satisfied.

On September 4, Richardson offered to settle her lien claim for $107,380. On September 26, after an ex parte hearing, Richardson agreed to be named as a payee along with Plaintiffs and Friedberg on a separate check in the amount of $107,380 and

5

that defense counsel in the Montgomery Litigation could hold that check until the lien claim was resolved. Plaintiffs received their settlement proceeds in October.

In December, Plaintiffs filed an action against Richardson and Klinedinst for legal negligence, and against Richardson for breach of fiduciary duty and declaratory relief. As to Klinedinst, Plaintiffs claimed that Klinedinst knew, consented to, approved, and ratified Richardson's conduct between July and September. Further, Plaintiffs alleged Klinedinst owed them a duty of care and breached that duty through Richardson's conduct. Two days after Plaintiffs filed their action, Richardson filed an action against them for declaratory relief.

Klinedinst moved to strike Plaintiffs' complaint under the anti-SLAPP statute. Klinedinst argued Plaintiffs' claim against it was subject to anti-SLAPP because the claim was based on Richardson's filing of a notice of lien and related conduct. The trial court denied the motion, concluding Plaintiffs' claim did not arise from protected activity because it did not seek to challenge Richardson's filing of an attorney lien. Rather, the gravamen of Plaintiffs' complaint was Richardson's failure to protect their interests by not timely providing an itemization of her fee claim and agreeing to the issuance of a separate check pending resolution of the fee dispute.

## DISCUSSION

Klinedinst contends the trial court erred in denying its anti-SLAPP motion because Plaintiffs' cause of action against it arose from protected activity, namely Richardson's conduct in asserting her attorney fee claim. We disagree.

6

"Section 425.16, subdivision (b)(1), provides: 'A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' The analysis of an anti-SLAPP motion thus involves two steps. 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.] 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.'" (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819-820.)

"We review an order granting or denying a motion to strike under section 425.16 de novo." (*Oasis West Realty, LLC v. Goldman*, *supra*, 51 Cal.4th at p. 820.) "In deciding whether the initial 'arising from' requirement is met, [we consider] 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' (§ 425.16, subd. (b).)" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

Activities protected by the anti-SLAPP statute include written or oral statements made before a legislative, executive, or judicial proceeding and written or oral

7

statements made in connection with an issue under consideration or review by a legislative, executive, or judicial body. (§ 425.16, subd. (e)(1), (2).) Whether a cause of action arises from protected activity depends upon its principal thrust or gravamen. (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 477; *Martinez v. Metabolife Internat., Inc*. (2003) 113 Cal.App.4th 181, 188.) "[T]he critical point is whether the plaintiff's cause of action itself [is] *based on* an act in furtherance of the defendant's right of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) In other words, "the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." (*Ibid*.) The anti-SLAPP statute does not apply where allegations of protected activity are only incidental to a cause of action based on unprotected activity. (*Martinez v. Metabolife Internat., Inc*., at p. 188.) The fact that "protected activity may lurk in the background—and may explain why the rift between the parties arose in the first place—does not transform a . . . dispute into a SLAPP suit." (*Episcopal Church Cases*, at p. 478.)

In the context of legal malpractice claims, courts have routinely held that the anti-SLAPP statute does not apply, particularly where petitioning activity is only incidental to plaintiff's claim. (See *Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272-1275 (*Hylton*) [a client's action against his or her attorney for malpractice, breach of fiduciary duty, or other related theory of recovery is not subject to the anti-SLAPP statute merely because some of the allegations refer to the attorney's actions in court]; *Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1535 ["Legal malpractice is not an activity protected under the anti-SLAPP statute."].) "If the

8

core injury-producing conduct upon which plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute." (*Hylton*, at p. 1272.)

Here, Plaintiffs sued Klinedinst based on Klinedinst's alleged knowledge, consent, approval, and ratification of Richardson's conduct between July and September. Further, Plaintiffs alleged Klinedinst owed them a duty of care and breached that duty through Richardson's conduct. That conduct included Richardson's alleged failure to protect Plaintiffs' interests because she did not timely provide them with an itemization of her fee claim and delayed in agreeing to the issuance of a separate check for the disputed fees to be held until the parties reached a resolution of their fee dispute.

Plaintiffs point to evidence that they repeatedly asked Richardson to provide an itemization of her lien, but Richardson did not provide that information for more than one month. Thereafter, Richardson refused Plaintiffs' proposal to have a separate check remain uncashed in Friedberg's possession or to have the funds retained in his trust account. During this time, Montgomery's former wife filed a judgment lien in the Montgomery Litigation for spousal support. Approximately three months passed between the time that Richardson filed her notice of attorney lien and Plaintiffs received their settlement proceeds. Plaintiffs claimed Richardson's conduct prevented consummation of the settlement in the Montgomery Litigation and thereby delayed their receipt of the settlement funds.

While Plaintiffs' complaint referred to Richardson's act of filing a notice of attorney lien, conduct that is covered by the anti-SLAPP statute (see *Premier Medical*

9

*Management Systems, Inc. v. California Ins. Guarantee Assn.* (2006) 136 Cal.App.4th 464, 477), the fact that a cause of action refers to protected activity does not, by itself, subject the cause of action to a special motion to strike. (*Freeman v. Schack* (2007) 154 Cal.App.4th 719, 729 ["the fact plaintiffs' claims are related to or associated with Schack's litigation activities is not enough" to subject such claims to the anti-SLAPP law].) "Although petitioning activity is part of the evidentiary landscape within which [Plaintiffs'] claims arose, the gravamen of [Plaintiffs'] claims is that [Richardson and thereby Klinedinst] engaged in nonpetitioning activity inconsistent with [their] fiduciary obligations owed to [Plaintiffs]." (*Hylton*, *supra*, 177 Cal.App.4th at p. 1272.) In their complaint, Plaintiffs did not seek to impose liability on Klinedinst based on Richardson's notice of attorney lien or her conduct in seeking to enforce that lien. Instead, as discussed above, Plaintiffs' claim against Klinedinst was based on Richardson's unprotected acts which allegedly resulted in a delay of the settlement in the Montgomery Litigation.

While we are befuddled by Plaintiffs' claim against Klinedinst as there appears to be no evidentiary basis for that claim, the anti-SLAPP statute is not the proper mechanism to strike Plaintiffs' complaint as the gravamen of Plaintiffs' claim against Klinedinst is Richardson's failure to protect Plaintiffs' interests rather than Richardson's petitioning activity; thus, the anti-SLAPP statute does not apply. In view of our conclusion, we need not decide whether Plaintiffs established a probability of prevailing on their claim. (*PrediWave Corp. v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1228; *Freeman v. Schack*, *supra*, 154 Cal.App.4th at p. 733

[when defendant does not show "protected activity" underlies plaintiff's claims, it is irrelevant whether plaintiff has shown a "probability of prevailing"].)

DISPOSITION

The order is affirmed.  Respondents are entitled to costs on appeal.


McINTYRE, J.

WE CONCUR:

HUFFMAN, Acting P. J.

NARES, J.

11