Filed 7/30/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RENEWABLE RESOURCES COALITION, INC.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>PEBBLE MINES CORPORATION et al.,<br><br>    Defendants and Appellants. | B234347 consolidated w/B236218<br><br>(Los Angeles County<br>Super. Ct. No. BC456803) |

APPEALS from an order and judgment of the Superior Court of Los Angeles County, Terry A. Green, Judge. Reversed and remanded with directions.

Nielsen, Haley & Abbott, Stephen W. Cusick, James C. Nielsen and Christine B. Cusick for Plaintiff and Appellant.

Keker & Van Nest, Susan J. Harriman, Steven A. Hirsch and C. Eli Ewing for Defendants and Respondents.

———————————————

Plaintiff and appellant Renewable Resources Coalition, Inc. (Coalition) appeals an order granting a special motion to strike (Code Civ. Proc., § 425.16) brought by defendants and respondents Pebble Mines Corporation (Pebble Inc.), Pebble Limited Partnership (Pebble LP), and their attorneys, Jermain, Dunnagan & Owens, P.C. (Jermain) (collectively, the Pebble defendants).[1]

The Pebble defendants cross-appeal, contending the trial court abused its discretion in awarding them merely $30,000 in attorney fees after they prevailed on their special motion to strike.

By way of background, the Pebble defendants obtained the Coalition's documents from the Coalition's former fundraiser and used those documents to prosecute a complaint against the Coalition before the Alaska Public Offices Commission (APOC) for alleged election law violations. In this action, the Coalition sued the Pebble defendants, alleging they knowingly purchased the Coalition's confidential documents from the former fundraiser for $50,000. The Pebble defendants successfully brought a special motion to strike. We reverse.

To determine the applicability of section 425.16, the anti-SLAPP statute, we look to the gravamen of the instant action. Rather than focusing on the gravamen of this action, which was that the Pebble defendants allegedly purchased the Coalition's confidential documents, the trial court focused on the injury to the Coalition, which was forced to defend itself in the APOC proceeding. However, the gravamen of an action is the *allegedly wrongful and injury-producing conduct*, not the damage which flows from said conduct. Here, the gravamen of the Coalition's action is the allegation that the Pebble defendants wrongfully purchased its confidential documents. Said purchase was not an act by defendants in furtherance of their right of petition or free speech. Therefore, the trial court erred in granting the special motion to strike.

---

[1]   All further statutory references are to the Code of Civil Procedure, unless otherwise specified.

2

As for the cross-appeal, our reversal of the order granting the special motion to strike moots the issues raised by the Pebble defendants on their cross-appeal. In view of the reversal of the order granting the special motion to strike, the Pebble defendants are not prevailing parties at this juncture and thus are not entitled to attorney fees in any amount.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Pleadings*.

The Coalition commenced this action on March 11, 2011, and filed the operative first amended complaint on March 22, naming the three Pebble defendants as well as Robert L. Kaplan (Kaplan) (not a party to this appeal).

The complaint pled in pertinent part:

Pebble Mine is a proposed open-pit mine for copper, gold and other metals in Southwest Alaska, in the headwaters of Bristol Bay. Pebble LP is an Alaska limited partnership undertaking the mine's development. Pebble Inc. is an Alaska corporation operating as the general partner of the limited partnership. The Jermain law firm, located in Anchorage, represented clients Pebble Inc. and Pebble LP.

The Coalition is an Alaska nonprofit corporation which opposed the mine project and seeks to preserve Alaska's fishing and hunting resources, including the land and waters that the fishing and hunting stock need to survive.

In 2008, opposition to Pebble Mine coalesced in the Alaska Clean Water ballot initiative, Ballot Measure 4, which would have impeded or blocked the mine's development.

In April 2008, the Coalition contracted with Fund Raising, Inc. (FRI), a California corporation, which is in the business of raising money for political campaigns. Kaplan is the principal and sole shareholder of FRI. As a professional fundraiser, Kaplan knew his clients considered their communications confidential, and that his clients relied on him not to disclose their internal, confidential communications related to the political campaign.

3

In September 2008, after the defeat of Ballot Measure 4, the Coalition terminated its contract with FRI. A dispute then arose concerning what amounts, if any were still due to FRI under the contract.

Although the contract called for the fee dispute to be resolved by arbitration in California, Kaplan contacted the Alaska attorneys who had represented the Pebble Mine interests in the recently concluded election campaign. Kaplan's intent in doing so was twofold: he did so as part of a plan to threaten the Coalition with disclosure of its confidential campaign correspondence to the Coalition's opponents in the event the Coalition failed to pay FRI all amounts that Kaplan considered due under the contract; and he did so with the intent of selling his client's confidential campaign communications to the Coalition's opponents, in order to raise funds with which to sue his clients for amounts Kaplan considered due under the contract.

In early 2009, Attorney Matthew Singer of the Jermain firm met with Kaplan in Los Angeles under the guise of considering whether to have Jermain represent FRI in its fee dispute with the Coalition. Jermain declined to represent FRI in the matter. However, Kaplan gave Jermain copies of confidential communications between Kaplan and the Coalition, and Jermain gave Kaplan a check for $50,000, drawn on the law firm's bank account.

A few weeks after obtaining the confidential documents, Jermain used those documents to prepare and file a formal complaint with the APOC. Jermain brought the complaint on behalf of its clients, Pebble Inc. and Pebble LP. The APOC complaint alleged the Coalition and other nonprofits had violated Alaskan election law, primarily, that the nonprofits were used to shield from public view the fact that substantial contributions in support of the ballot initiative were being made by one individual, Robert Gillam (Gillam).

The actions of Jermain and its clients in bringing the APOC complaint achieved their aim of undermining the Coalition. For example, the Moore Foundation advised the Coalition that due to bad publicity surrounding the APOC proceeding, it would not renew an intended annual grant of $1.8 million.

4

In the APOC proceeding, the Coalition admitted it had failed to report as campaign expenditures the cost of sending emails to members urging them to vote yes on the ballot measure, and the cost of making space available for campaign materials on the Coalition's folding table at the Alaska State Fair. The Coalition disputed all other charges.

The APOC complaint was ultimately settled in early 2010 with no finding of liability against Gillam, the Coalition or the other nonprofits. APOC staff explicitly acknowledged the respondents to its complaint had asserted their positions in good faith, and that substantial evidence showed the respondents " 'took substantial efforts to obtain and rely on proper advice in order to comply with the requirements of Alaska law.' " The APOC complaint was settled for a payment of $100,000, which was about half of what APOC spent to prosecute the matter and much less than the expense of having to defend the matter at trial.

Based on the above, the Coalition's superior court complaint pled causes of action against Kaplan for breach of fiduciary duty, breach of professional duty, negligence, interference with prospective economic advantage, and unjust enrichment.

As against the Pebble defendants, the complaint asserted two causes of action: interference with contract (fourth cause of action), and interference with prospective economic advantage (sixth cause of action). The Coalition pled:

Jermain was aware of the Coalition's contract with FRI, and Jermain was given a copy of the contract, which restricted FRI's ability to disclose confidential communications. Notwithstanding its knowledge of the Coalition/FRI agreement, Jermain induced FRI to breach the contract by offering to pay, and paying, $50,000 in exchange for FRI's delivery of confidential communications between Kaplan and the Coalition. In doing so, Jermain acted as counsel and agent for its clients, Pebble Inc. and Pebble LP. As a result of the sale of the Coalition's confidential documents to its opponents, the Coalition was damaged by having, at substantial expense, to defend the APOC proceeding to a finding of no liability. The Coalition also suffered a dramatic drop in contributions and grant money resulting from adverse publicity triggered by the

5

Pebble defendants' use of the confidential documents to wage a smear campaign in the press to the effect that (1) the Coalition and the entire opposition to Pebble Mine were pawns of one wealthy supporter; and (2) the Coalition was violating Alaska law by shielding the identity of supporters, which was not the case.

   2. *Special motion to strike.*

   On April 4, 2011, *a mere 24 days after the commencement of the action*,[2] the Pebble defendants filed a special motion to strike the only two causes of action in which they were named, i.e., the fourth cause of action for interference with contract and the sixth cause of action for interference with prospective economic advantage.

   The moving papers asserted the Coalition's claims against the Pebble defendants arose from protected conduct, that is to say, activities in furtherance of their right of petition or free speech in connection with a public issue. The Pebble defendants contended "[b]ecause [the Coalition's] causes of action against [them] arise from the APOC complaint, they fall squarely under the anti-SLAPP statute."

   The Pebble defendants further argued that because they had made a threshold showing the Coalition's lawsuit against them arose from their exercise of their right of petition to the APOC, the burden shifted to the Coalition to establish a probability it would prevail on its claims, and that the Coalition was incapable of meeting its burden.

   The moving papers were supported by extensive declarations and exhibits, including the declaration of Attorney Matthew Singer of the Jermain firm. Singer stated he met with Kaplan in Santa Monica on March 1, 2009, at which time he gave Kaplan "a check payable from my law firm's client trust account in the amount of $50,000." According to Singer, the check was for a "consulting arrangement" with Kaplan, who would be available to assist in the preparation of an APOC complaint. Singer admitted

---

[2]    The special motion to strike was filed extremely early in the proceedings. Section 425.16 provides a special motion to strike "may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time . . . ." (*Id*. at subd. (f).)

6

receiving a stack of documents from Kaplan, but asserted he only obtained documents that had not been specifically designated as "confidential."

    3. *Opposition.*

In opposition, the Coalition argued that "bribing a professional consultant to turn over confidential documents is not protected activity," and therefore the Coalition's claims against the Pebble defendants were not subject to the anti-SLAPP procedure. Although the moving parties relied on their bringing the APOC complaint as protected activity for SLAPP purposes, the Coalition was not suing the Pebble defendants for bringing the APOC complaint. Rather, the Coalition was suing the Pebble defendants for inducing Kaplan to sell them the Coalition's confidential documents for $50,000.

Further, although the moving parties "argue[d] that anything done to gather evidence in preparation for their bringing their APOC complaint should likewise qualify as protected activity . . . ; the SLAPP statute does not protect illegal activity in preparing for a lawsuit. Here, . . . ample evidence shows that the moving parties' conduct in bribing Kaplan was a violation of California Uniform Trade Secrets Act, an inducement of breach of contract, and conversion."

As for the merits, the Coalition contended there was sufficient evidence to support a judgment in its favor. Specifically, the litigation privilege did not protect Kaplan's sale of the Coalition's documents to the Pebble defendants. Further, the fact the Coalition had not yet pleaded "the legal theories of misappropriation of trade secrets and conversion in addition to what it has pleaded should be of no consequence at this initial stage of the litigation; a motion for leave to amend will promptly be brought." The Coalition specifically invoked Civil Code section 3426.1, subdivision (b)(1), defining misappropriation as "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means,' – which covers [the Pebble defendants]."

4. *Trial court's ruling granting special motion to strike.*

On May 13, 2011, the matter came on for hearing. The trial court granted the special motion to strike and subsequently issued an extensive written ruling setting forth the basis of its decision.

Relying on the allegations of the fourth and sixth causes of action against the Pebble defendants, the trial court found: "Both causes of action, then, arise out of Defendants' filing of the APOC complaint. . . . . 'The constitutional right to petition . . . includes the basic act of filing litigation or otherwise seeking administrative action.' [Citations.] The acts which form the basis for both of these causes of action (i.e., [Jermain's] retention of Kaplan as a consultant and possession of allegedly confidential documents) were acts in furtherance of defendants' right of petition or free speech. [The Coalition's] contention [is] that it 'is not suing defendants [for] bringing the APOC action. Rather, [the Coalition] is suing the [Pebble] defendants for inducing Kaplan to sell them [the Coalition's] confidential documents for $50,000'. . . is belied by its damages allegations, set forth above."

After finding the Pebble defendants had met their threshold burden to show the Coalition's complaint arose from their constitutionally protected activity, the trial court ruled the Coalition had failed to meet its burden of showing a probability of prevailing on any its claims against the Pebble defendants.

The trial court found the fourth cause of action, interference with contract, was barred by the litigation privilege.

As for the sixth cause of action, interference with prospective economic advantage, the trial court stated: "Plaintiff concedes that its 6th cause of action against defendants should be stricken: 'defendants' reliance on the litigation privilege has merit, insofar as to date, the evidence of damage resulting from the disruption of prospective economic relationships consists of losses in grants and donations that track back to the

APOC proceeding, and the litigation privilege could bar reliance on damages that resulted solely from that proceeding.' (Opposition, 14:1-5)."[3]

The trial court also rejected the Coalition's request for leave to amend to add new causes of action for misappropriation of trade secrets and conversion, stating: "Allowing a SLAPP plaintiff leave to amend the complaint once the court finds the prima facie showing has been met would completely undermine the statute by providing the pleader a ready escape from section 425.16's quick dismissal remedy. Instead of having to show a probability of success on the merits, the SLAPP plaintiff would be able to go back to the drawing board with a second opportunity to disguise the vexatious nature of the suit through more artful pleading. This would trigger a second round of pleadings, a fresh motion to strike, and inevitably another request for leave to amend.' (*Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1073.)"[4]

5. *Subsequent proceedings.*

On August 2, 2011, the Pebble defendants filed a motion seeking $169,795 in attorney fees, having successfully moved to strike both causes of action against them pursuant to section 425.16. After hearing the matter, the trial court denied the Pebble

---

[3]  On appeal, the Coalition contends the trial court misconstrued its concession with respect to the sixth cause of action. The record confirms the limited scope of the Coalition's concession. In opposing the special motion to strike, the Coalition conceded the litigation privilege barred evidence of damage "consist[ing] of losses in grants and donations that track back to the APOC proceeding," but the litigation privilege did not "bar claims for the statutory violation [of the Uniform Trade Secrets Act (Civ. Code, § 3426.1)] or the two torts complete upon the exchange of $50,000 for the documents." (Coalition's Memorandum of Points and Authorities in Opposition to Anti-SLAPP Motion, p. 14.)

[4]  Due to the pendency of the special motion to strike, the trial court denied the Coalition leave to amend. However, as discussed below, the trial court erred in granting the special motion to strike because the causes of action against the Pebble defendants were not subject to the anti-SLAPP statute. Further, the special motion to strike was brought only 24 days after the commencement of the action. (§ 425.16, subd. (f).) Under these circumstances, upon remand, leave to amend would be appropriate in order to enable the Coalition to refine its pleadings.

9

defendants' request for fees in the amount of $169,795, and instead granted fees in the amount of $30,000.

On September 28, 2011, the trial court entered a judgment of dismissal in favor of the Pebble defendants. The judgment of dismissal includes the $30,000 award of attorney fees to the Pebble defendants.

The Coalition appealed the order granting the Pebble defendants' special motion to strike.[5] The Pebble defendants appealed the September 28, 2011 judgment, insofar as the judgment awarded them only $30,000 in attorney fees.

## CONTENTIONS

The Coalition contend the trial court erred in granting the special motion to strike because the Pebble defendants' alleged liability arose from their *conduct* in bribing Kaplan to turn over confidential documents, not from protected speech, making the anti-SLAPP statute inapplicable; and the trial court further erred in ruling the Coalition's action lacked minimal merit.

On cross-appeal, the Pebble defendants contend the trial court abused its discretion by making an inadequate award of attorney fees after they prevailed on their special motion to strike.

## DISCUSSION

1. *General principles re a special motion to strike.*

a. *Overview.*

As stated in *Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12 (*Simpson*), a Strategic Lawsuit Against Public Participation, or SLAPP, "is a civil lawsuit that is aimed at preventing citizens from exercising their political rights or punishing those who have done so. ' "While SLAPP suits masquerade as ordinary lawsuits such as defamation and interference with prospective economic advantage, they are generally meritless suits brought primarily to chill the exercise of free speech or petition rights by the threat of

---

[5] The order granting the special motion to strike is directly appealable. (§ 425.16, subd. (i); § 904.1., subd. (a)(13).)

10

severe economic sanctions against the defendant, and not to vindicate a legally cognizable right." ' (*Castillo v. Pacheco* (2007) 150 Cal.App.4th 242, 249-250, quoting Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1296 (1997-1998 Reg. Sess.) as amended May 12, 1997, pp. 1-2.)" (*Simpson, supra*, 49 Cal.4th at p. 21.)

In 1992, "out of concern over 'a disturbing increase' in these types of lawsuits, the Legislature enacted section 425.16, the anti-SLAPP statute. (§ 425.16, subd. (a).) The statute authorized the filing of a special motion to strike to expedite the early dismissal of these unmeritorious claims. (§ 425.16, subds. (b)(1), (f).) To encourage 'continued participation in matters of public significance' and to ensure 'that this participation should not be chilled through abuse of the judicial process,' the Legislature expressly provided that the anti-SLAPP statute 'shall be construed broadly.' (§ 425.16, subd. (a).)" (*Simpson, supra*, 49 Cal.4th at p. 21.)

A special motion to strike "involves a two-step process. *First, the defendant must make a prima facie showing that the plaintiff's 'cause of action . . . aris[es] from' an act by the defendant 'in furtherance of the [defendant's] right of petition or free speech . . . in connection with a public issue.'* [Fn. omitted.] (§ 425.16, subd. (b)(1).) If a defendant meets this threshold showing, the cause of action shall be stricken unless the plaintiff can establish 'a probability that the plaintiff will prevail on the claim.' " (*Simpson, supra*, 49 Cal.4th at p. 21, italics added.)

b. *Determining the applicability of the anti-SLAPP statute to a plaintiff's claim.*

In determining whether the anti-SLAPP statute applies in a given situation, we analyze whether the defendants' (here, the Pebble defendants') act underlying the plaintiff's (Coalition's) cause of action was an act by the defendants in furtherance of their right of petition or free speech. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) The "*principal thrust* or *gravamen*" of the plaintiff's claim determines whether section 425.16 applies. (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188; accord *Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 319.)

11

As used in section 425.16, " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes:  (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  (§ 425.16, subd. (e).)

c. *Standard of appellate review*.

Review "of an order granting or denying a motion to strike under section 425.16 is de novo.  [Citation.]  We consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.'  (§ 425.16, subd. (b)(2).) However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.'  [Citation.]"  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

2. *The instant lawsuit against the Pebble defendants did not arise out of their exercise of their right to free speech or petition in connection with a public issue.*

a. *The relevant inquiry is the gravamen of the instant lawsuit.*

The threshold issue is whether the Pebble defendants met their initial burden in bringing the special motion to strike.  The inquiry is whether the Pebble defendants' acts underlying the Coalition's claims were acts by the Pebble defendants in furtherance of their right of petition or free speech.  (*City of Cotati v. Cashman, supra,* 29 Cal.4th at p. 78.)  To reiterate, the "*principal thrust* or *gravamen*" of the plaintiff's cause of action determines whether section 425.16 applies.  (*Martinez v. Metabolife Internat., Inc.,*

12

*supra,* 113 Cal.App.4th at p. 188; accord *Club Members for an Honest Election v. Sierra Club, supra,* 45 Cal.4th at p. 319.)

The "meaning of 'gravamen' is clear; 'gravamen' means the 'material part of a grievance, charge, etc.' (Webster's New Internat. Dict. (2d ed. 1957) unabridged.)" (*Lindros v. Governing Bd. of the Torrance Unified School Dist.* (1973) 9 Cal.3d 524, 540, fn. 13.)

In the context of the anti-SLAPP statute, the "gravamen is defined by the *acts on which liability is based . . . .*" (*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1190.) The "focus is on the principal thrust or gravamen of the causes of action, i.e., *the allegedly wrongful and injury-producing conduct* that provides the foundation for the claims. [Citations.]" (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 490-491, italics added.)

   b. *Trial court erred in focusing on the complaint's damages allegations; the gravamen of an action is the allegedly wrongful and injury-producing conduct, not the damage which flows from said conduct.*

As indicated, the trial court ruled: "Both causes of action [against the Pebble defendants] then, arise out of Defendants' filing of the APOC complaint. . . . . 'The constitutional right to petition . . . includes the basic act of filing litigation or otherwise seeking administrative action.' [Citations.] The acts which form the basis for both of these causes of action (i.e., [Jermain's] retention of Kaplan as a consultant and possession of allegedly confidential documents) were acts in furtherance of defendants' right of petition or free speech. *[The Coalition's] contention [is] that it 'is not suing defendants [for] bringing the APOC action. Rather, [the Coalition] is suing the [Pebble] defendants for inducing Kaplan to sell them [the Coalition's] confidential documents for $50,000'. . . is belied by its damages allegations, set forth above.*" (Italics added.)

Thus, the trial court erroneously focused on the Coalition's damages allegations, i.e., that the Coalition was forced to defend itself in the APOC proceeding. Instead, the proper focus should have been on the "allegedly wrongful and injury-producing conduct"

13

(*Castleman, supra*, 216 Cal.App.4th at p. 490) which gave rise to the Coalition's damages.

Simply stated, to determine the applicability of the anti-SLAPP statute, we look to the allegedly wrongful and injurious conduct of the defendant, *rather than the damage which flows from said conduct*. Here, the gravamen of the Coalition's action was that the Pebble defendants allegedly wrongfully purchased the Coalition's confidential documents from Kaplan for the sum of $50,000. Said purchase was not an act by the Pebble defendants in furtherance of their right of petition or free speech, making the anti-SLAPP procedure inapplicable.

### c. *The Pebble defendants' arguments lack merit*.

The Pebble defendants contend they were being sued for their protected activity in complaining to the APOC of the Coalition's alleged violations of Alaska elections law. The Pebble defendants contend their use of the Coalition's "purportedly confidential documents to initiate and litigate the APOC proceeding" satisfied subdivisions (e)(1) and (e)(2) of section 425.16 because "it consists of statements made in or in connection with an executive proceeding or other official proceeding authorized by law." The Pebble defendants assert section 425.16 applies to their initiating the APOC proceeding because the constitutional right to petition includes the right to file litigation or to seek administrative action, such as before the APOC.

The Pebble defendants also take the position their use of "purportedly confidential documents" to wage a smear campaign in the press against the Coalition, by publicizing the allegations of the APOC complaint, also falls within section 425.16, because: it consists of statements made in connection with an issue under consideration by an executive body or in an official proceeding (§ 425.16, subd. (e)(2); statements made in a public forum in connection with an issue of public interest (§ 425.16, subd. (e)(3); and conduct in furtherance of the rights of petition and free speech, in connection with an issue of public interest concerning violations of Alaska election laws. (§ 425.16, subd. (e)(4).)

14

The Pebble defendants' attempts to bring their conduct within the ambit of the anti-SLAPP statute are unavailing. Although the Pebble defendants rely on their bringing the APOC complaint as protected activity for SLAPP purposes, the Coalition did not sue the Pebble defendants for having prosecuted the APOC complaint. Rather, as discussed, the pleadings establish the gravamen of the Coalition's claim against the Pebble defendants is that they induced Kaplan to sell them the Coalition's confidential documents for $50,000.

Specifically, the first amended complaint alleges at paragraph 47: "Notwithstanding knowledge of [the] agreement [between FRI and the Coalition], and knowledge that such documents were confidential under the agreement, [the Jermain firm] induced FRI to breach its contract with [the Coalition], and to breach the implied covenant of good faith and fair dealing implied into that contract, *by offering and then paying $50,000 to FRI in exchange for (i) FRI's delivery of all of the confidential communications between its principal Robert Kaplan and the principals of [the Coalition], . . . .*" (Italics added.)

A fair reading of the Coalition's complaint is that the Pebble defendants were being sued for wrongfully purchasing the Coalition's confidential documents from Kaplan, not for prosecuting the APOC complaint. The Pebble defendants' purchase of the Coalition's confidential documents from Kaplan does not amount to an exercise of the constitutionally protected rights of petition or free speech. Given the nature of the Coalition's claims against the Pebble defendants, the claims were not subject to a special motion to strike under section 425.16. Therefore, the grant of the special motion to strike was error.

3. *Unnecessary to address second prong of the two-part test.*

As discussed, on our de novo review we conclude the Pebble defendants failed to meet their threshold burden to show the Coalition's claims arose from the Pebble defendants' constitutionally protected activity. Thus, the Coalition's lawsuit against the Pebble defendants was not subject to early scrutiny by way of a special motion to strike.

Therefore, it is unnecessary to address the second prong of the two-part test, i.e., whether the Coalition, in opposing the special motion to strike, met its burden to establish a reasonable probability it could prevail on its claims.

4. *The Pebble defendants' cross-appeal concerning the $30,000 award of attorney fees.*

On cross-appeal, the Pebble defendants contend the trial court abused its discretion in awarding them $30,000 in attorney fees instead of the $169,795 which they requested.

In view of our reversal of the order granting the special motion to strike, the Pebble defendants are no longer the prevailing parties. (§ 425.16, subd. (c)(1).) Therefore, the Pebble defendants are not entitled to the $30,000 attorney fee award which they were awarded by the trial court, let alone an enhanced fee award.

## DISPOSITION

The order granting the special motion to strike and the subsequent judgment, awarding $30,000 in attorney fees to the Pebble defendants, are reversed. The matter is remanded with directions to reinstate the Coalition's action against the Pebble defendants, and for further proceedings not inconsistent with this opinion. The Coalition shall recover its costs on appeal.

**CERTIFIED FOR PUBLICATION**

KLEIN, P. J.

We concur:

CROSKEY, J.

KITCHING, J.

16